ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
8965 S Eastern Ave, Suite 260
Las Vegas, NV 89123
Telephone: (702) 614-0600
Facsimile: (702) 614-0647
*Attorney for Debtor*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>BITE THE BULLET LLC.;<br><br>Debtor. | Case No.   18-12813-leb<br>Chapter 11<br><br>**MEMORANDUM BRIEF IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION NO. 2 AND FINAL APPROVAL OF DISCLOSURE STATEMENT NO. 2**<br><br>Confirmation Hearing Date:   November 20, 2018<br>Confirmation Hearing Time:  9:30 a.m. |

Debtor-in-possession and plan proponent BITE THE BULLET LLC. ("*Debtor*"), by and through its counsel, hereby submits this memorandum brief ("*Memorandum*") in support of confirmation of the Chapter 11 Plan of Reorganization No. 2 [DE #145] (the "*Plan*") and final approval of the Disclosure Statement No. 2 [DE #144] ("*Disclosure Statement*").

This memorandum brief is supported by the pleadings and documents on file in this bankruptcy case, and the contemporaneously-filed supporting Declaration of David Zitiello, Jr. ("*Zitiello Decl.*").

DATED:  November 15, 2018            **ATKINSON LAW ASSOCIATES LTD.**

By:  _____/s/ Robert Atkinson_____
       ROBERT E. ATKINSON, ESQ.
       Nevada Bar No. 9958
       *Attorney for Debtor*

## I. FACTUAL and PROCEDURAL BACKGROUND

### A. Overview

1. On May 16, 2018 ("*Petition Date*") [1], the Debtor filed its voluntary chapter 11 bankruptcy petition under title 11 of the United States Code ("*Bankruptcy Code*").  [DE #1.]
2. Since the Petition Date, the Debtor has continued to operate its business as a debtor-in-possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  [Zitiello Decl. at ¶ 3.]
3. The Section 341 meeting of creditors was held and was concluded on June 21, 2018.  [Id. at ¶ 4.]
4. The Debtor is an ammunition remanufacturer, with one facility in Las Vegas.   The Debtor is a small-business debtor, as that term is defined in 11 U.S.C. § 101(51D).  [Id. at ¶ 5.]
5. The Debtor has timely filed all monthly operating reports.  [Id. at ¶ 6.]
6. The Debtor is current on all fees and charges assessed against the bankruptcy estate pursuant to chapter 123 of title 28 of the United States Code, including all bankruptcy fees currently owed to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).  [Id. at ¶ 7.]
7. There is only one secured lender in this case, Meadows Bank, whose claim is impaired.  Virtually all of the assets of the Debtor are secured, through a blanket UCC-1.  Meadows Bank's ballot votes in favor of the Plan.  [Id. at ¶ 8.]

### B. Key Events in this Bankruptcy Case

8. On July 4, 2018, the Debtor filed an adversary proceeding (adversary case no. 18-01065-leb) against David and Diane Meister [DE #50] seeking to avoid and recover, pursuant to Sections 547, 548, and 550 of the Bankruptcy Code, a total of $292,999.81 in pre-petition transfers made by Debtor to these defendants.  That adversary case, which is in progress, is the only adversary case filed by the Debtor.

---

[1] Capitalized terms not otherwise defined in this Memorandum shall have the definitions as provided for in the Plan and the Disclosure Statement.

9. On July 12, 2018, the Debtor docketed its initial proposed disclosure statement [DE #53] and initial plan [DE #54].

10. On October 11, 2018, the Debtor docketed its amended proposed disclosure statement no. 2 [DE #144] ("*Disclosure Statement*") and amended plan no. 2 [DE #145] ("*Plan*").

11. Also on October 11, 2018, the Bankruptcy Court conditionally approved the Disclosure Statement and set a date of November 20, 2018 for the combined hearing for final approval of the Disclosure Statement and confirmation of the Plan. [DE #149.]

12. The claims deadline for non-governmental persons and entities was September 19, 2018. [DE #4.] David Meister originally timely filed four proofs of claim in this case [POCs #1, 4, 5, and 6]. On September 25, 2018, he filed a fifth proof of claim [POC #12] that appears to incorporate all prior claims, and also adds new line items. Although it was filed after the claims bar date, POC #12 is best described as a master amended proof of claim. Later on September 25, 2018, the Debtor filed an Omnibus Objection [DE #112] to Meister's proofs of claim 1, 4, 5, and 6, seeking to disallow them on the basis that they are duplicative with Meister's POC #12. Also on September 25, 2018, the Debtor filed an objection to Meister's POC #12 [DE #114], seeking to disallow all but $43,550.00 of that claim. On October 16, 2018, the debtor and the Meisters signed a stipulation [DE #161] resolving the two objections, and providing the Meisters a general unsecured Class 2 claim in the amount of $234,859.21. The Court approved that stipulation [DE #162].

13. On November 9, 2018, the Meisters filed an objection to the final approval of the Disclosure Statement and Plan, on several grounds [DE #167] (the "*Meister Objection*").

## II.     FINAL APPROVAL OF THE DISCLOSURE STATEMENT

14. The standard for approval of a disclosure statement accompanying a chapter 11 plan of reorganization is embodied in 11 U.S.C. § 1125(a)(1), which reads:

> "(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical

>investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information".

15. The bankruptcy court has discretion in determining what constitutes adequate information. In re Sanitec Industries, Inc., BAP No. CC-09-1183, December 21, 2009 (B.A.P. 9th Cir. 2009) (citing to In re Brotby, 303 B.R. 177, 193 (B.A.P. 9th Cir., 2003)). Such a determination is subjective, to be made on a case-by-case basis. Id.

16. As noted above, the Debtor is a small business debtor. The contains the information required by Official Form 425B (Disclosure Statement for Small Business Under Chapter 11), including:

- A statement as to the purpose of the document; [2]
- Deadlines for voting and objecting to the Plan and the date of the Plan confirmation hearing; [3]
- A 'Disclaimers' section; [4]
- A description and history of the Debtor's business; [5]
- Identification of the insiders of the Debtor; [6]
- Identification of the management of the Debtor before and during bankruptcy; [7]
- A summary of the events leading to the filing of the chapter 11 case; [8]
- A summary of key events during the bankruptcy case; [9]
- A section on recovery of avoidable transfers, and the potential recovery from the one adversary proceeding filed by the Debtor against the Meisters, and investigations of other potential transfers to other persons; [10]

---

[2] *See* Disclosure Statement at Section 1.02.
[3] *See* Id. at Section 1.03.
[4] *See* Id. at Section 1.04.
[5] *See* Id. at Section 2.01.
[6] *See* Id. at Section 2.04.
[7] *See* Id. at Section 2.05.
[8] *See* Id. at Section 2.02.
[9] *See* Id. at Section 2.06.
[10] *See* Id. at Section 2.08.

-4-

- A section on claims objections; [11]
- A summary of assets and liabilities; [12]
- A description of the purpose of a chapter 11 plan; [13]
- A description of unclassified claims such as administrative expenses, UST fees, and priority tax claims, including potential claimants and estimated amounts; [14]
- A summary of classified claims, by class; [15]
- A summary of the treatment of classified claims under the proposed plan, including secured claims, priority unsecured claims, general unsecured claims, subordinated general unsecured claims, and equity interests; [16]
- A discussion of the means of implementing the proposed plan, including funding for the plan, a financial model, post-confirmation management, and post-confirmation operations; [17]
- A summary of risk factors; [18]
- A summary of the treatment of unexpired leases and executory contracts under the proposed plan; [19]
- A discussion of the tax consequences of the proposed plan; [20]
- A discussion on the absolute priority rule; [21]
- A summary of confirmation requirements and procedures, including (i) who may vote or object; (ii) what is an allowed claim or an allowed equity interest; (iii) what is an impaired claim or an impaired equity interest; (iii) who is not entitled to vote; (iv) votes necessary to confirm the Plan; (v) votes necessary for a class to accept the Plan; and (vi) treatment of non-accepting classes; [22]
- A liquidation analysis; [23]
- A discussion of the feasibility of the Plan; and [24]

---

[11] *See* Id. at Section 2.07.
[12] *See* Id. at Section 2.03.
[13] *See* Id. at Section 1.01.
[14] *See* Id. at Section 3.02; *see also* Errata [DE #63].
[15] *See* Id. at Section 3.03.
[16] *See* Id. at Section 3.03.
[17] *See* Id. at Section 3.05 and Exhibit 1.
[18] *See* Id. at Section 3.07.
[19] *See* Id. at Section 3.06.
[20] *See* Id. at Section 3.08.
[21] *See* Id. at Section 3.04;
[22] *See* Id. at Article IV.
[23] *See* Id. at Section 4.03 and Exhibit 2.

- A section on the effect of the Confirmation of the Plan, including (i) the discharge of the Debtor, (ii) how the Plan may be modified, and (iii) the final decree. [25]

17. By statute, in a small business case, the Court the court may approve a disclosure statement submitted on the official forms. 11 U.S.C. § 1125(f)(2). Because the Disclosure Statement contains the information required by Official Form 425B -- and indeed provides much more information than is contained in that form -- Debtor asserts that the Disclosure Statement thus contains adequate information.

18. The Meister Objection identifies four separate arguments as to why the Disclosure Statement should not be approved on a final basis. Debtor's separately-filed Reply [DE # ____ ] to the Meister Objection addresses each of these concerns, and, to avoid cut-and-paste between documents, the arguments contained therein are simply incorporated herein by reference.

19. No other creditor has filed an objection to the disclosure statement. Accordingly, the Court should determine that the Disclosure Statement contains adequate information within the meaning of Section 1125, and approve it on a final basis.

### III.    PLAN CONFIRMATION

***A. The Plan Complies with All Applicable Requirements of Bankruptcy Code Section 1129(a) other than Section 1129(a)(8)***

20. Section 1129(a) of the Bankruptcy Code provides that the Court shall confirm a chapter 11 plan if each of the statute's applicable sixteen subsections has been satisfied. 11 U.S.C. § 1129(a). As described below, the Plan satisfies all but one of the applicable subsections of Section 1129(a), namely, subsection (a)(8). Therefore, as discussed below, a cram down under Section 1129(b) is requested.

> *i.* *Section 1129(a)(1): The Plan Complies with Applicable Provisions of the Bankruptcy Code.*

21. Section 1129(a)(1) requires that a plan "comply with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). The legislative history of this subsection indicates that it

---

[24] See Id. at Section 4.04.
[25] See Id. at Article V.

embodies and incorporates the requirements of Sections 1122 and 1123, which govern the classification of claims and interests and the requisite mandatory contents of a plan. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. at 412 (1977); *see also* In re Western Asbestos Co., 313 B.R. 832, 840 (Bankr. N.D. Cal. 2003). As set forth below, the Plan complies with Sections 1122 and 1123, and with all other applicable provisions of the Bankruptcy Code, and thus satisfies the requirements of this subsection.

### a. *The Plan Satisfies the Requirements of Section 1122*

22. Section 1122 provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." 11 U.S.C. § 1122(a). By its plain language, Section 1122 prohibits only the classification of dissimilar claims into the same class. *See* Alan J. Resnick, *et al.*, 1 COLLIER ON BANKRUPTCY at ¶ 1122.03[1] (16th ed. rev. 2011). Section 1122(a) does not require that all unsecured claims be placed in the same class. In re Montclair Retail Ctr., L.P., 111 B.R. 663, 665 (B.A.P. 9th Cir. 1995). As such, courts have broad discretion to determine the propriety of classification schemes in light of the facts of each case. Steelcase Inc. v. Johnston (In re Johnston), 21 F.3d 323, 327 (9th Cir. 1994) ("bankruptcy court judges must have discretionary power in classifying claims under § 1122(a)").

23. Here, Article II(C) of the Plan places claims and interests in three different classes: secured (Class 1), general unsecured (Class 2), and equity interests (Class 3). Each claim placed in a particular class is substantially similar to all other claims in that class. Thus, the Plan satisfies § 1122.

24. No creditor or party in interest has objected to confirmation of the Plan on the basis that any claim in any of the Classes has been improperly classified.

### b. *The Plan Satisfies the Requirements of Section 1123*

25. Section 1123(a) sets forth eight mandatory requirements for the contents of a chapter 11 plan. 11 U.S.C. § 1123(a). Additionally, Section 1123(b) sets forth various provisions that may be, but need not be, included within a chapter 11 plan. 11 U.S.C. § 1123(b). Sections 1123(c) and (d) contain other minor provisions. As shown below, the Plan complies with all applicable requirements of these subsections.

- **Section 1123(a)(1): The Plan designates classes of claims.** Section 1123(a)(1) generally requires that chapter 11 plans designate classes of claims and interests.  More particularly, Section 1123(a)(1) requires that chapter 11 plans designate classes of claims, other than claims of a kind specified in Sections 507(a)(2) (administrative expense claims), 507(a)(3) (claims arising during the "gap" period in an involuntary case, which is not applicable in the present case), and 507(a)(8) (priority tax claims).  Administrative claims and priority tax claims do not require class designation under Section 1123(a)(1) because their rights may not be impaired, unless the holder of the claim affirmatively agrees to a less favorable treatment.  Article II(C) of the Plan satisfies this requirement by expressly classifying all claims other than administrative expense claims and priority tax claims.
- **Section 1123(a)(2):  Identification of any unimpaired classes of claims.**  As shown in Article II(C), the Plan contains no unimpaired classes of claims.  Accordingly, this Section is not relevant to the Plan.
- **Section 1123(a)(3):  Specify the treatment of all impaired classes of claims.**  The Plan satisfies this requirement by specifying the treatment for all four impaired Classes.
- **Section 1123(a)(4):  Provide the same treatment for each claim or interest of a particular class.**  The Plan satisfies this requirement by providing the same treatment to each claim that is classified in each particular class established under the Plan.
- **Section 1123(a)(5):  Provide adequate means for the plan's implementation.**  The Plan satisfies this requirement by setting forth the specific and straightforward means for the Plan's implementation, several of which are expressly provided for in Section 1123(a)(5).  Among other things, the Plan provides for the continued corporate existence and operations of the Debtor, the retention and re-vesting of all property of the estate by the reorganized Debtor, the funding for the Plan through the proceeds of the reorganized Debtor's ongoing business operations and net proceeds from the adversary proceeding litigation, the treatment of executory contracts and unexpired leases, the curing

- **Section 1123(a)(6): For debtors who are corporations, a provision for the inclusion in the charter of the debtor a provision prohibiting the issuance of nonvoting equity securities.**  The Debtor is a limited liability company, and so this provision does not apply.
- **Section 1123(a)(7): Appropriate provision for the selection of the officers of the Debtor.**  The Plan satisfies this requirement by providing that there is no change in the management of the Debtor, post-petition, and thus there is no selection of directors and officers in a manner inconsistent with the interests of creditors, equity security holders, and public policy.
- **Section 1123(a)(8): For debtors who are individuals, provide for the payment to creditors under the plan of all earnings from personal services performed by the debtor, or such portion necessary for plan execution.**  The Debtor is a limited liability company, and so this provision does not apply.
- **Section 1123(b)(1): A plan may impair or leave unimpaired any class of claims or interests.**  Consistent with this section, the Plan impairs all classes.
- **Section 1123(b)(2): Provide for the assumption, rejection, or assignment of any executory contract and unexpired lease.**  Consistent with this section, Article III(A) of the Plan assumes one lease, and rejects all other leases and executory contracts that may exist.
- **Section 1123(b)(3): Retention of claims.**  Consistent with this section, Article IV(E) of the Plan expressly states that "nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, the Debtor or any other entity."
- **Section 1123(b)(4): Sale of property of the estate.**  The Plan does not contemplate a sale of property of the estate, and so this provision is not relevant.
- **Section 1123(b)(5): Modifications of the rights of holders of claims.**  Consistent with this Section, the plan treatments specified in Article II(C) of the Plan modify, or leave unaffected, as the case may be, the rights of holders of each class of claims.

- **Section 1123(b)(6): Incorporation of provisions not inconsistent with the Bankruptcy Code.** In accordance therewith, the Plan includes additional appropriate implementation provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, such as a section on discharge (Article IV(A)), and the discharge injunction (Article IV(B)).
- **Section 1123(c): For individual debtors, a plan proposed by an entity other than the debtor may not provide for the use, sale, or lease of exempted property.** The Debtor is a limited liability company, and the Plan proponent is the Debtor, and so this provision does not apply.
- **Section 1123(d): Cure of defaults shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.** No cure of defaults is required or proposed in the Plan, so this provision does not apply.

### ii. Section 1129(a)(2): The Debtor Has Complied with all Applicable Provisions of the Bankruptcy Code.

26. The legislative history of Section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under Sections 1125 and 1126. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as § 1125 regarding disclosure"); *see also* In re Sierra-Cal, 210 B.R. 168, 176 (Bankr. E.D. Cal. 1997); In re Trans World Airlines, Inc., 185 B.R. 302,313 (Bankr. E.D. Mo. 1995) ("The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of § 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the plan.").

27. On October 11, 2018, the Court entered an order [DE #149] that conditionally determined that the Disclosure Statement contained adequate information, as that term is defined in 11 U.S.C. § 1125, and that order also set deadlines, including deadlines and procedures relating to balloting and solicitation of votes to accept or reject the Plan. The next day, on October 12, 2018, the Debtor promptly caused solicitation packages (including ballots) to be mailed to holders of allowed claims and equity interests in all

impaired classes, and notice packages to all other creditors and parties-in-interest. [*See* DE #159 (Certificate of Service).]

28. The same disclosure statement was mailed to all creditors and parties-in-interest. [DE #159.] No solicitation of the acceptance or rejection of the Plan No. 2 occurred after the commencement of the case until after the solicitation packages were mailed. [Zitiello Decl. at ¶ 9.]

29. The ballots that have been returned all either accept or reject the Plan, and the Debtor's ballot summary [DE #168] conforms to the requirements of Section 1126.

30. Based on the foregoing, the Debtor submits that it complied with the requirements of Section 1125 and thereby satisfies Section 1129(a)(2).

### iii. Section 1129(a)(3): The Plan has been Proposed in Good Faith.

31. Section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code," In re Trans Max Tech., Inc., 349 B.R. 80, 88-89 (Bankr. D. Nev. 2002) (citing Platinum Capital v. Sylmar Plaza L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1074 (9th Cir. 2002), *cert, denied,* 538 U.S. 1035 (2003)). The good faith determination is based on the totality of the circumstances. In re Trans Max, 349 B.R. at 88-89 (Bankr. D. Nev. 2002) (citing In re Sylmar Plaza, L.P., 314 F.3d at 1074), and is made on a case by case basis. In re Marshall, 298 B.R. 670, 675-76 (Bankr. CD. Cal. 2003).

32. Here, the Debtor's Plan sets forth an effort to maximize the value of the Debtor's assets for the benefit of the Debtor's creditors, whereby the Debtor will manage its property in the ordinary course of business, and the funding of the Plan is based upon the Debtor's financial forecast and ongoing business operations. The Plan thus achieves a result consistent with the objectives and purposes of the Bankruptcy Code.

33. Based on the foregoing, the Debtor submits that the Plan satisfies the requirements of Section 1129(a)(3) regarding good faith.

### iv. Section 1129(a)(4): Payments by Debtor in Connection with the Case are Subject to Court Approval as to Reasonableness.

-11-

34. Section 1129(a)(4) provides in relevant part that all payments "for services or for costs and expenses in or in connection with the case", such as professional fees, made from estate assets have "been approved by, or [are] subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4).
35. In accordance with the requirements of Section 1129(a)(4), Article VII(E) of the Plan provides that the Bankruptcy Court "will retain jurisdiction over this Plan and its implementation."  Additionally, Article II(B) of the Plan, subsection 1, provides that "To be paid, the all employed professional(s) must file a fee application and the Court must rule on the application. Only the amount of professional fees and expenses allowed by the Court will be owed and required to be paid under this Plan."  In addition, that subsection also requires that all requests for payment of an administrative claim must be filed within 30 days after the Effective Date.
36. Based on the foregoing, the Debtor submits that the Plan satisfies the requirements of Section 1129(a)(4) regarding payments by Debtor for services, costs, and expenses to be paid in connection with this case.

> **v.    *Section 1129(a)(5): Disclosure of New Management and Compensation of Insiders.***

37. Section 1129(a)(5) requires: (i) that the proponent of a plan disclose the identity and affiliations of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (ii) that the appointment or continuance in office of such individuals be consistent with the interests of creditors and shareholders and with public policy; and (iii) that the proponent disclose the identity of any insider that will be employed or retained by the reorganized debtor and the nature of the compensation to be provided to such insider. 11 U.S.C. §§ 1129(a)(5)(A) and (B).
38. The Plan complies with Section 1129(a)(5) because it discloses the identity of the one individual who will retain his ownership interest, and his compensation.  Specifically, Article II(C) of the Plan specifies that Zito Holdings Corp (an entity owned entirely by David Zitiello, Jr.) will acquire 100% of the newly-issued equity of the Debtor, in exchange for a payment of $5,000, in satisfaction of the absolute priority rule.  Article V(B) of the Plan states that Zitiello will continue with his current $4,000/month compensation for the duration of the Plan.

39. Based on the foregoing, the Debtor submits that the Plan satisfies the requirements of Section 1129(a)(5) regarding new management, the identity of insiders, and the nature of any compensation of the same.

> **vi.    Section 1129(a)(6): Rate Changes Subject to Government Regulators.**

40. Section 1129(a)(6) applies to the rates of governmental regulatory commissions with jurisdiction. The Debtor's business operations do not involve the establishment of rates over which any regulatory commission has jurisdiction, and therefore Section 1129(a)(6) does not apply to the Plan.

> **vii.    Section 1129(a)(7): "Best Interest" Test for Impaired Classes.**

41. Section 1129(a)(7) establishes what is commonly referred to as the "best interests test." Specifically, with respect to each class of impaired claims or interests under a plan, every holder of a claim or interest in such impaired class either (i) accept the plan, or (ii) receive or retain property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7)(A).

42. All classes are impaired in the Plan. As demonstrated by the Liquidation Analysis attached as Exhibit 2 to the Disclosure Statement, impaired unsecured classes will receive under the Plan property of a value that is not less than the amount they would receive or retain if the Debtor were liquidated under a Chapter 7. Impaired equity interests receive $0 in the Plan, which is not less than the amount they would receive in Chapter 7 liquidation (in which they also receive $0). The value of the secured assets of the Debtor is less than the amount of the Meadows Bank claim, and so the impaired secured class receives more property and value from the Debtor than they would in a Chapter 7 liquidation. *See* Liquidation Analysis Section D(i) (liquidation analysis of Meadows Bank's secured claim).

43. Based on the foregoing, the Debtor submits that the Plan satisfies the requirements of Section 1129(a)(7) regarding the best interest of the creditors test for impaired classes.

> **viii.    Section 1129(a)(8): The Plan Has Not Been Accepted by All Impaired Classes.**

-13-

44. Section 1129(a)(8) requires that each class of claims and interests established under a plan either accept the plan or not be impaired under the plan. 11 U.S.C. § 1129(a)(8). "A class of claims has accepted a plan if such plan has been accepted by creditors... that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors... that have accepted or rejected such plan." 11 U.S.C. § 1126(c). A class of claims that is not impaired is deemed to have accepted the plan. 11 U.S.C. §§ 1126(f) and 1129(a)(8).  A class of claims or interests that do not receive or retain any property under the plan is deemed to reject. 11 U.S.C. § 1126(g). In the plan, the Class 3 equity interest class is wiped out and receives nothing under the Plan, and thus is impaired.  In addition, the ballot summary [DE #168] identifies that Class 2 is a rejecting class.  Therefore, the requirements of Section 1129(a)(8) are not met, and a cram down will be requested by Debtor at the Plan confirmation hearing (see Section B below for additional discussion on cram down).

    *ix.* **_Section 1129(a)(9): Required Treatment of Administrative Claims and Priority Claims._**

45. Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under Section 507(a) receive specified cash payments under the plan unless the holder of such a claim agrees to a different treatment. 11 U.S.C. § 1129(a)(9). Pursuant to Section II(B) of the Plan, and in accordance with Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, the Plan provides that each holder of an Allowed Administrative Claim will be paid in full on the later of: (i) the Effective Date; (ii) upon Court approval of the allowed claim; or (iii) a later date, if the claimant agrees to such different treatment.  The Plan therefore satisfies the requirements of § 1129(a)(9).

    *x.* **_Section 1129(a)(10): One Accepting Impaired Class._**

46. Section 1129(a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan, determined without including any acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10).  Class 1, which contains no insiders, is an impaired class that accepts the Plan. The Plan therefore satisfies Section 1129(a)(10).

    *xi.* **_Section 1129(a)(11): No Need for Further Reorganization._**

47. Section 1129(a)(11) provides that the Court shall confirm a plan only if "confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor... unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. §1129(a)(11). Here, because the Debtor's Plan is feasible, confirmation of the same is not likely to be followed by liquidation or need for further reorganization.  Specifically, Debtor believes it has proven the feasibility of the Plan through its Disclosure Statement and the accompanying Financial Model.

48. A review of the Debtor's Monthly Operating Reports shows that the Debtor has continued to generate substantial revenue through ongoing business operations. Debtor has maintained all post-petition expenses, made all monthly collateral payments to Meadows Bank, and has complied with the court-approved cash collateral order.

49. Furthermore, the Debtor's Financial Model, attached as Exhibit 1 to the Disclosure Statement, evidence the Debtor's ability to fund the Plan in that the Net Profits for each year supports the anticipated Plan payments, assuming that sales targets are met. Therefore, because the Debtor's Plan is feasible, confirmation of the Debtor's Plan is not likely to be followed by liquidation or need for further reorganization.

50. Based on the foregoing, the Debtor submits that the Plan satisfies the requirements of Section 1129(a)(11).

> xii. **Section 1129(a)(12): Payment of Statutory Fees.**

51. Section 1129(a)(12) requires that a chapter 11 plan provide that all fees payable under 28 U.S.C. § 1930 (consisting primarily of quarterly fees owing to the United States Trustee) be paid on or before the effective date of the plan. As noted above, the Debtor is current in the payment of all quarterly fees owed to the United States Trustee. Moreover, subsection 2 of Article II(B) of the Plan states that the Debtor shall continue to be responsible for timely payment of all U.S. Trustee statutory fees (per 28 U.S.C. § 1930), until a final decree closing this case is entered.

> xiii. **Sections 1129(a)(13)-(16) are Not Applicable to the Debtor.**

52. Section 1129(a)(13) is not applicable to the Debtor because the Debtor has no retiree benefits within the meaning of Section 1129(a)(13).  [Zitiello Decl. at ¶ 10.]  Bankruptcy

-15-

Code §§ 1129(a)(14) and (15) are only applicable to individual debtors. *See* 11 U.S.C. §§ 1129(a)(14) and (15). Finally, the Debtor is a commercial business entity, not a charitable organization. As such, Section 1129(a)(16) does not apply.

### B. *The Plan Should Be Confirmed Because It Complies with All Applicable Requirements of Bankruptcy Code Section 1129(b), and Non-Accepting Class(es) can be Crammed Down*

53. Section 1129(b) authorizes the Court to confirm a plan if all of the applicable requirements of Section 1129(a) are met other than Section 1129(a)(8), which requires that each class accept the plan or not be impaired under the plan. *See* 11 U.S.C. § 1129(b)(1), (a)(8). If all requirements of Section 1129(a) are met except Section 1129(a)(8), "the court shall confirm the plan notwithstanding the requirements of. . . paragraph [8] if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). This treatment is also known as "cram down."

54. Class 1, which is the impaired secured claim held by Meadows Bank, has accepted the Plan in its ballot. [Zitiello Decl. at ¶ 11.]

55. Class 2 has rejected the Plan [see DE #168 (ballot summary)].

56. Class 3, which is equity interests, is deemed pursuant to 11 U.S.C. § 1126(g) to not accept the plan because the Plan provides that the equity interests are wiped out, i.e., the holders of the equity interests in the Debtor are not entitled to receive or retain any property under the Plan on account of such interests.

57. Accordingly, because at least one impaired class has voted to accept the plan, a cram down of the rejecting Classes 2 and 3 will be requested by Debtor at the Plan confirmation hearing. Specifically, Debtor intends to request that the Court cram down the rejecting classes, on the basis that the Plan does not discriminate unfairly, and is fair and equitable, to the rejecting classes.

58. The Plan does not discriminate unfairly because all creditors of a class type are being treated equally.

59. Section 1129(b)(2) outlines what may be considered "fair and equitable" with respect to the various types of claims and interests. *See* 11 U.S.C. § 1129(b)(2).

-16-

60. With respect to unsecured claims, a plan is fair and equitable pursuant to 11 U.S.C. § 1129(b)(2)(B)(ii) if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." Although Class 2 does not accept the Plan, they can be crammed down because they do receive a distribution under the Plan, and the holders of the only junior interests (the Class 3 equity interests) do not receive or retain under the Plan any distribution or property. Hence, the Plan is fair and equitable to the non-accepting Class 2.

61. With respect to equity interests, a plan is fair and equitable pursuant to 11 U.S.C. § 1129(b)(2)(C)(i) if "the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest." The equity interests of the Debtor are common LLC membership interests, with no liquidation preference. [Zitiello Decl. at ¶ 12.] Class 3 can thus be crammed down because these interests receive $0 via the Plan, which is equal to what they would receive in a chapter 7 liquidation.

62. Accordingly, the provisions of Section 1129(b) are met, and the Plan can be confirmed.

### C. The Plan Can Be Confirmed Because It Does Not Conflict with Section 1129(d)

63. Section 1129(d) prohibits the court from confirming a plan "if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act" and there is a request of a party in interest that is a governmental unit. 11 U.S.C. § 1129(d).

64. In this bankruptcy case, there is no request by a party in interest that is a governmental unit alleging that the principal purpose of the Plan is to avoid taxes or the application of Section 5 of the Securities Act. The principal purpose of the Plan is to reorganize the Debtor's debts, not to avoid taxes or the application of Section 5 of the Securities Act. [Zitiello Decl. at ¶ 13.]

### D. The Plan Complies with Bankruptcy Rule 3016(a)

65. In accordance with the requirements of Bankruptcy Rule 3016(a), the Plan is dated and identifies the entity submitting the Plan.

### E. The Meister's Objections to Plan Confirmation can be Overruled

66. The Meister Objection argues that the Plan should not be confirmed because the Plan allegedly does not comply with subsections 1129(a)(3), (7), (8), (11) and 1129(b).

67. The Debtor's separately-filed Reply [DE # ____ ] to the Meister Objection addresses each of these concerns, and, to avoid cut-and-paste between documents, the arguments contained therein are simply incorporated herein by reference.

### F. Plan Modification at Plan Confirmation Hearing

68. The Debtor, as the proponent of the Plan, may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code.  11 U.S.C. §1127(a).

69. Pursuant to Local Rule 3019, the Debtor reserves the right to propose modifications to the Plan, if any are required to obtain Plan confirmation, and only to the extent permitted by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules. The Debtor has no such proposals at this time.  However, if any arise and are so proposed, they would be considered by the Court, and, if approved, would be incorporated in the order confirming the plan.

## IV.   CONCLUSION

70. For the reasons stated above, Debtor respectfully requests that the Court approve the Disclosure Statement on a final basis, and confirm the Plan.

# # # # #

DATED:  November 15, 2018           **ATKINSON LAW ASSOCIATES LTD.**

By:   /s/ Robert Atkinson
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
*Attorney for Debtor*